UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:17-cv-02377-CAS(PLAx) | Date | July 10, 2017 |
|---|---|---|---|
| Title | EUROPLAY CAPITAL ADVISORS, LLC v. MARIA LOUISE JOENSEN | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| David Harris | Gregory Smith |
| Michael Sherman | |

**Proceedings:** DEFENDANT'S MOTION TO DISMISS (Dkt. 11, filed May 4, 2017)

## I. INTRODUCTION

On December 14, 2016, plaintiff Europlay Capital Advisors, LLC ("ECA") filed this action in Los Angeles County Superior Court against defendant Maria Louise Joensen p.k.a Aura Dione alleging (1) breach of oral contract; (2) common count for money had and received; and (3) intentional misrepresentation – fraud. Dkt. 1, Ex. A. ("Compl."). On March 28, 2017, defendant removed the state court action to this Court on the basis of diversity jurisdiction. Dkt. 1.

On May 4, 2017, defendant filed a notice of motion and motion to dismiss the complaint on *forum non conveniens* grounds. Dkt. 11 ("MTD"). In support of the motion to dismiss, defendant filed numerous declarations and exhibits. Dkts. 11-2 through 11-27. On June 5, 2017, plaintiff filed an opposition, dkt. 16 ("Opp'n"), as well as a request for judicial notice, dkt. 17. Defendant filed a reply on June 26, 2017, dkt. 18 ("Reply"), supported by a series of reply declarations and a request for judicial notice, dkts. 18-2 through 18-18.

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:17-cv-02377-CAS(PLAx) | Date | July 10, 2017 |
|---|---|---|---|
| Title | EUROPLAY CAPITAL ADVISORS, LLC v. MARIA LOUISE JOENSEN | | |

## II. BACKGROUND

### A. Plaintiff's Allegations

Plaintiff ECA alleges the following facts. The defendant Maria Louise Joensen (p.k.a. Aura Dione) is a well-known European recording artist. Compl. ¶ 2. Joensen resided in Los Angeles County, California at the relevant times mentioned in the complaint. Id. In September 2012, Joensen and her Danish legal counsel asked Mark Dyne, Chairman of ECA, to assist and advise her in litigation against her former manager and agent, Khalid Schroeder. Id. ¶ 4. Schroeder had wrongfully asserted ownership over the intellectual property rights to Joensen's musical compositions, including the master recordings. Id. ¶ 5. However, Joensen lacked the resources necessary to fund litigation against Schroeder. Id.

In or about October 2012, after numerous conversations with Joensen at the ECA offices in Sherman Oaks, California, Dyne orally agreed to retain the law firm of Skadden, Arps, Slate, Meagher & Flom to represent Joensen in connection with the proposed litigation against Schroeder. Id. ¶ 6. All invoices from Skadden were to be addressed to Joensen, care of ECA, and paid by ECA. Id. ECA alleges that Joensen agreed to repay ECA the total amount of money advanced on her behalf within twelve months of the conclusion of the litigation against Schroeder, regardless of the outcome. Id.

On or about October 31, 2012, the Skadden firm, acting on Joensen's behalf, commenced a suit against Schroeder in California ("the Schroeder litigation").[1] Id. ¶ 7. As the Schroeder litigation progressed, ECA kept Joensen aware of mounting legal fees and costs both orally and in writing. Id. Joensen allegedly did not object to the fees and repeatedly assured Dyne that ECA would be paid in full for all fees and costs advanced on her behalf. Id.

On or about December 30, 2015, a judgment was entered against Schroeder and his management company in the Schroeder litigation. Id. ¶ 8. The court awarded damages in favor of Joensen in the amount of $900,000, plus $788,000 in lost profits, and $1 in punitive damages. Id. The court awarded Joensen sole and exclusive ownership of the

---

[1] The case was entitled <u>Maria Louise Joensen v. Khalid Schroeder, et al.</u>, Los Angeles Superior Court Case No. BC494856.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-02377-CAS(PLAx) | Date | July 10, 2017 |
| Title | EUROPLAY CAPITAL ADVISORS, LLC v. MARIA LOUISE JOENSEN | | |

master rights to all of her musical compositions. Id. Joensen allegedly thanked Dyne for advancing the funds for the Schroeder litigation and reassured him that repayment would be made within twelve months of the conclusion of the litigation. Id. ¶ 9.

Joensen never paid ECA for the money advanced on her behalf. Id. In January 2015, Joensen "fled" California and returned to Denmark to "avoid this and other litigation in which she was involved." Id. ¶ 10.

In February and March of 2015, Dyne met with a different attorney that Joensen had retained, Brad Kane, to discuss the payment due to ECA. Id. ¶ 11. ECA provided bills for Kane to review, but Kane later resigned from representing Joensen. Id. In April 2015, Dyne met with Joensen at the ECA offices in Sherman Oaks, California, to again discuss the payment of legal fees. Id. ¶ 12.

ECA allegedly paid Skadden in excess of $2,000,000 with the expectation that Joensen would repay ECA within twelve months of the conclusion of the Schroeder litigation. Id. ¶ 21. Joensen has not repaid any part of this sum of money, although ECA has demanded that she do so. Id. ¶ 22. ECA alleges that Joensen breached the oral agreement by refusing to repay ECA for funds advanced on her behalf. Id. ¶ 18.

Joensen allegedly stated repeatedly that "she did not care what it cost to prosecute the [Schroeder] litigation; that the album masters she sought to recover were worth millions; that she would repay ECA . . . [and] that she was a women [sic] of her word and could be trusted to repay her obligation to ECA in full." Id. ¶ 25. ECA alleges that Joensen made the foregoing representations throughout the Schroeder litigation with the intent to induce ECA to continue to advance funds. Id. ¶ 26. ECA contends that Joensen secretly had no intention to repay ECA once she achieved a favorable result in the Schroeder litigation. Id. ¶ 28. Joensen allegedly knew that her statements to ECA were false and misleading, id. ¶ 32, and "used and abused" ECA's goodwill to her advantage, id. ¶ 34.

### B. Defendant's Showing on the Motion to Dismiss

Joensen introduces the following information in support of her motion to dismiss under the doctrine of *forum non conveniens*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:17-cv-02377-CAS(PLAx) | Date | July 10, 2017 |
|---|---|---|---|
| Title | EUROPLAY CAPITAL ADVISORS, LLC v. MARIA LOUISE JOENSEN | | |

Joensen characterizes this action as part of a "scorched-earth litigation campaign" brought against her by an ex-fiancé, Janus Friis, after the termination of their relationship. Dkt. 11-10, Joensen Decl. ¶ 24. Friis is a Danish entrepreneur and billionaire well-known for co-founding Skype. Id. ¶ 3. Dyne, the Chairman of ECA, was a "friend and business associate of Friis and had served on Skype's board of directors from its formation." Id. ¶ 11. Dyne "often assisted Friis with business and personal matters when requested." Id. Joensen alleges this action "is simply the most recent litigation assault by Friis in a raft of cases he or entities under his control or acting on his behalf" have brought against her.[2] Id. ¶ 24. The present action is the third case brought against Joensen in California since mid-2015. Id. In total, there are currently six actions pending between Joensen and her representatives and Friis and his affiliated entities. Dkt. 11-8, Vejby Decl. ¶ 8.

Here, Joensen claims that when Friis first learned of the music rights dispute with her former manager, Schroeder, Friis "assumed control" and hired a team of lawyers and consultants to represent Joensen at his expense. Joensen Decl. ¶ 5. Friis asked his Danish counsel, Actio Law Firm ("Actio"), to bring legal claims against Schroeder. Id. The principal attorneys at Actio, Balle and Christensen, informed Joensen that she was their client, but Friis would pay their fees. Id. Joensen avers that Friis "took great care to avoid disclosing the expenses" and told her that "he was happy to pick up expenses related to the attorneys' work." Id. ¶ 6.

In the fall of 2012, Friis advised Joensen it might be necessary to engage counsel in the United States to commence an action against Schroeder in the United States. Id. ¶ 10. Friis and Dyne recommended Lance Etcheverry, a partner at Skadden, to represent Joensen in the California arm of their efforts against Schroeder. Id. ¶ 12. Joensen trusted Friis's and Dyne's judgement and agreed that Skadden should be retained to pursue the Schroeder litigation in California. Id. Joensen claims that she never

---

[2] Joensen contends that this case is part of an overall effort by Friis to harass her. According to Joensen, Friis is attempting to subject her to discovery to learn about purported infidelities. As part of the efforts to harass her, Joensen claims that, inter alia, Friis and Dyne have demanded that she sign a document disclosing "how many abortions, sexually transmitted infections and lovers Joensen had allegedly had during the course of the couple's relationship." Dkt. 1 ¶ 15; see also Dkt. 11-6, Kane Decl. ¶ 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| | | | |
|---|---|---|---|
| Case No. | 2:17-cv-02377-CAS(PLAx) | Date | July 10, 2017 |
| Title | EUROPLAY CAPITAL ADVISORS, LLC v. MARIA LOUISE JOENSEN | | |

executed a retainer agreement with Skadden, and Skadden has been unable to locate an engagement letter in response to her request for a copy. Id. ¶ 13.

Joensen alleges that she never saw any of Skadden's invoices during the Schroeder litigation. Id. ¶ 19. Joensen claims that she never promised or represented to Dyne that she would pay Skadden's fees or reimburse ECA. Id. All of Skadden's invoices, except for the last one or two, were sent to ECA. Id. ¶ 20. After Joensen's relationship with Friis ended in December 2014, Skadden sent its final invoices to Joensen's Los Angeles-based lawyer, Brad Kane, "most likely at Dyne's instructions." Id. ¶ 20. Joensen had retained Kane to speak with Dyne about resolving Friis's demands. Id. ¶ 17.

Starting in January 2015, Joensen alleges that Dyne began making "explicit threats of litigation and other punitive actions" on behalf of Friis if she did not agree to repay funds that Friis had spent in support of her music career and living expenses. Id. ¶ 16. In his declaration, Kane claims that he spoke with Dyne, and the two discussed Skadden's fees. Dkt. 11-6, Kane Decl. ¶ 4–5. According to Kane, Dyne never claimed or represented that Joensen had agreed to repay ECA for Skadden's fees. Id. ¶ 9. Kane states that Dyne told him Joensen must repay the fees "given the end of [her] relationship" with Friis. Id. ¶ 5.

Joensen avers that Friis and entities acting on his behalf are intent to litigate in California, rather than Denmark, to subject her to "intrusive discovery to obtain evidence of alleged affairs, a topic with which [Friis] is obsessed, and to impose serious inconvenience and expense." Joensen Decl. ¶ 24.

## III. LEGAL STANDARDS

Defendant brings this motion to dismiss under the doctrine of *forum non conveniens*. MTD at 1. Generally, "[i]n dismissing an action on *forum non conveniens* grounds the court must examine: (1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal." Lueck v. Sundstrand Corp., 236 F.3d 1137, 1142 (9th Cir. 2001). "The *forum non conveniens* determination is committed to the sound discretion of the trial court." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981). It is "an exceptional tool to be employed sparingly," and not a "doctrine that compels plaintiffs to choose the optimal forum for their claim." Dole Food Co. v. Watts, 303 F.3d 1104, 1118 (9th Cir. 2002) (quoting Ravelo Monegro v. Rosa, 211 F.3d 509, 514 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-02377-CAS(PLAx) | Date | July 10, 2017 |
| Title | EUROPLAY CAPITAL ADVISORS, LLC v. MARIA LOUISE JOENSEN | | |

2000)). "[T]he standard to be applied is whether . . . defendants have made a clear showing of facts which . . . establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent . . . ." Cheng v. Boeing Co., 708 F.2d 1406, 1410 (9th Cir.1983). "Where the plaintiff is a United States citizen, the defendant must satisfy a heavy burden of proof." Lueck , 236 F.3d at 1143. Ordinarily "[t]he plaintiff's choice of forum will not be disturbed unless the 'private interest' and 'public interest' factors strongly favor trial in the foreign country." Id. at 1142-43.

## IV. DISCUSSION

The Court will discuss each set of factors below in order to evaluate whether a dismissal for *forum non conveniens* is appropriate.

### A. Adequacy of the Alternative Forum

An alternative forum is adequate if: (1) defendants are amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy. Carijano v. Occidental Petroleum Corp., 643 F.3d 1216, 1225 (9th Cir. 2011) (citing Piper Aircraft, 454 U.S. at 254 n. 22). This threshold question is typically satisfied except under "rare circumstances . . . where the remedy offered by the other forum is clearly unsatisfactory." Lockman Found. v. Evangelical All. Mission, 930 F.2d 764, 768 (9th Cir. 1991) (quoting Piper Aircraft, 454 U.S. at 254, n.22). "The effect of Piper Aircraft is that a foreign forum will be deemed adequate unless it offers no practical remedy for the plaintiff's complained of wrong." Lueck, 236 F.3d at 1144.

Here, Joensen avers that Denmark is a suitable alternative forum. MTD at 13. Plaintiff does not appear to dispute the adequacy of the forum. Accordingly, the Court assumes that Denmark would be a suitable alternative forum and will proceed to evaluate other factors governing whether dismissal is appropriate.

### B. Private Interest Factors

The private interest factors to be weighed in a *forum non conveniens* inquiry are:

(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-02377-CAS(PLAx) | Date | July 10, 2017 |
| Title | EUROPLAY CAPITAL ADVISORS, LLC v. MARIA LOUISE JOENSEN | | |

sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

Bos. Telecomms. Grp., Inc. v. Wood, 588 F.3d 1201, 1206–07 (9th Cir. 2009) (quoting Lueck, 236 F.3d at 1145).

### 1. Residence of the Parties and the Witnesses

With regard to the residence of the parties, ECA is a Delaware corporation with its principal place of business in California. Compl. ¶ 1. Joensen is a Danish citizen currently residing in Denmark but formerly domiciled in California during the events at issue in this case. MTD at 2; Compl. ¶ 2.

Turning to the residence of the witnesses, the Ninth Circuit has stated that "a court's focus should not rest on the number of witnesses or quantity of evidence in each locale. Rather, a court should evaluate the materiality and importance" of the witnesses' testimony and then determine their "accessibility and convenience to the forum." Lueck, 236 F.3d at 1146. "A defendant need not specify in great detail the contents of each witness's testimony, but 'must provide enough information to enable the District Court to balance the parties' interests.'" Bos. Telecomms. Grp., Inc., 588 F.3d at 1210 (quoting Piper Aircraft, 454 U.S. at 258).

ECA alleges that all of the material or important witnesses reside in California or are willing to travel to this forum. Opp'n at 12. ECA names seven witnesses that it claims have firsthand knowledge about ECA's relationship with Joensen and the attorneys' fees incurred in the Schroeder litigation in California, including ECA's office manager, Joensen's former personal assistant, driver, and manager. Id. at 12–13. In its opposition, ECA described the topics about which these witnesses can testify. Id. Furthermore, ECA argues that the foreign non-party witnesses named by Joensen have knowledge "solely" about separate actions against Schroeder in Europe, rather than the Schroeder litigation at issue here, which occurred in California. Id. at 13.

In contrast, Joensen asserts that the witnesses in this case are "highly concentrated" in Denmark, the United Kingdom, and Germany. MTD at 14. Joensen names ten non-party witnesses from whom she would seek testimony and identifies their role or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:17-cv-02377-CAS(PLAx) | Date | July 10, 2017 |
|---|---|---|---|
| Title | EUROPLAY CAPITAL ADVISORS, LLC v. MARIA LOUISE JOENSEN | | |

relationship to her or Friis, including her European counsel and Friis's financial administrator. Id. at 14–15. Joensen apparently plans to call these witnesses to establish that Friis paid her legal expenses in Europe. Id. Joensen identifies two witnesses that can testify regarding the California Schroeder litigation, her former Danish attorneys, Christensen and Balle. Reply at 10–11. Joensen asserts that Christensen can testify to "interactions and communications with Dyne and Etcheverry concerning California litigation," and Balle can testify to his "knowledge and understanding of his instructions from Friis concerning the California litigation." Id. Christensen avers that Friis's trust "Icon" paid the fees for his work on Joensen's case, including for his work connected to the California Schroeder litigation. Dkt. 18-1, Christensen Reply Decl. ¶ 3. Joensen does not assert that these witnesses can directly testify as to the payment of Skadden's fees,[3] except that Joensen plans to establish "Friis's promise and willingness to pay attorney's fees connected to her dispute with her former management." Reply at 10.

Joensen also attacks the materiality and credibility of ECA's proposed witnesses. Joensen contends that her former driver, Doug Higgs, "has literally nothing to add" since he was not present during conversations between Joensen and Dyne. Id. at 12. Joensen asserts that ECA "may also want to seriously rethink" whether it will rely on her former manager, Hermione Ross, as a witness. Id., n.8. In Ross's declaration in support of plaintiff's opposition, Ross states that she never worked for Joensen in Denmark. Dkt. 16-2 ¶ 3. Joensen has submitted emails which indicate that Ross met with Joensen and her agents in Denmark on several occasions. Dkt. 18-9, Exh. Y.

ECA describes California witnesses who can allegedly testify as to the payment of Skadden's fees incurred in the Los Angeles litigation, the topic specifically at issue here, opp'n at 12–16, and Joensen does not specify which of her European witnesses can testify on this central topic. On balance, this factor weighs against dismissal.

    2. **The Forum's Convenience to the Litigants**

Turning to the next private interest factor, the convenience of the litigants, Joensen asserts that litigating in California "would be highly inconvenient and unduly burdensome." Joensen Decl. ¶ 25. Joensen states that her counsel has informed her that

---

[3] Joensen contends that her defense will establish "the financial details concerning Friis's payment, through Icon, of attorneys in Denmark and Germany." Reply at 10–11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:17-cv-02377-CAS(PLAx) | Date | July 10, 2017 |
|---|---|---|---|
| Title | EUROPLAY CAPITAL ADVISORS, LLC v. MARIA LOUISE JOENSEN | | |

it would cost "triple" to litigate this dispute in the United States compared to a trial in Danish court. Dkt. 18-6, Joensen Reply Decl. ¶ 14.

ECA argues that the Court should conclude California is a convenient forum for Joensen because she has previously resided, worked, and initiated legal action in Los Angeles. Dkt. 16-1, Dyne Decl. ¶ 10. In contrast, ECA's CEO, Dyne, has not traveled to Denmark within the past fifteen years, has no plans to travel there, and does not speak any Danish.[4] Id. ¶ 24. Dyne also claims that all relevant communications (oral and written) between ECA and Joensen were conducted in English. Id. ¶ 21.

Balancing these considerations, litigation in either forum will likely inconvenience the party that must travel. However, since Joensen has recently resided in California, she has at least some familiarity with the forum, whereas Dyne claims not to have visited Denmark within the past fifteen years. The court concludes that the convenience of the litigants weighs slightly against dismissal.

### 3. Access to Physical Evidence and Other Sources of Proof

The Court now turns to consider the third private interest factor, access to physical evidence and other sources of proof. In a case in which "witnesses are scattered around the globe . . . both parties will likely be forced to depend on deposition testimony in lieu of live testimony for at least some witnesses." Bos. Telecomms. Grp, Inc., 588 F.3d at 1210. "'Any court . . . will necessarily face some difficulty in securing evidence from abroad,' but these complications do not necessarily justify dismissal." Id. at 1208 (quoting Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1181 (9th Cir. 2006)).

Joensen alleges that she would need to seek "documents" from foreign witnesses, but does not further specify what documents need to be acquired from abroad. MTD at 14, 17. Bjarke Vejby, an attorney licensed to practice in the Kingdom of Denmark, references email correspondence between Friis and his London-based administrator, Amanda Chorn, "related to the payment of the attorneys' fees that Europlay seeks herein." Dkt. 18-4, Vejby Reply Decl. ¶ 7.

---

[4] Dyne believes that all seven of ECA's witnesses speak English, but none speak Danish. Dyne Decl. ¶ 22.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    'O'

| Case No. | 2:17-cv-02377-CAS(PLAx) | Date | July 10, 2017 |
|---|---|---|---|
| Title | EUROPLAY CAPITAL ADVISORS, LLC v. MARIA LOUISE JOENSEN | | |

ECA argues that "most, if not all, of the 'material' and 'important' documents are located in California and written in English." Opp'n at 18. "For example, Skadden's bills, ECA's notes and records of meetings, telephone logs, and calendars are all located in this forum." Id. ECA alleges that even if this action were dismissed in favor of litigation in Denmark, several of Joensen's witnesses are located in the United Kingdom or Germany, and Joensen would still need to resort to the same Hague Evidence Convention's procedures to obtain documents from those witnesses. Id. at 18–19.

On balance, this factor weighs against dismissal. Joensen has not demonstrated that, on balance, the parties will have easier access to pertinent records by litigating in Denmark.

### 4. Whether Unwilling Witnesses Can Be Compelled to Testify

Similarly, the next private interest factor pertains to the parties' ability to gather testimony from unwilling witnesses. Joensen contends that she would be highly prejudiced if forced to litigate ECA's claims in California, because to gather evidence from foreign witnesses, she must resort to "the cumbersome and slow procedures" provided by the Hague Evidence Convention. MTD at 16. Joensen contends that Danish courts will not permit any pre-trial discovery to obtain evidence for a proceeding in California. Id. at 16. According to Vejby, "the only assistance a Danish court will provide is to obtain documentary evidence or a summary witness statement for use at the foreign trial to the extent requested by the foreign court." Vejby Decl. ¶ 14. Joensen avers that if this action were refiled in Denmark, ECA would not be likewise prejudiced because it could obtain discovery from U.S. witnesses under 28 U.S.C. § 1782. MTD at 15–16. This statute permits a district court to order a person residing in that district to give testimony or produce documents for use in a foreign proceeding. 28 U.S.C. § 1782. The order can be made "pursuant to a letter rogatory" or request made by a foreign tribunal. Id.

Joensen further contends that three of her Danish witnesses will require a court order to testify. Reply at 11. Joensen asserts that both Friis and her former Actio attorney, Balle, are hostile witnesses but could be compelled to testify in Denmark. Id. Additionally, Joensen's other former Actio attorney, Christensen, "has decided he will not voluntarily appear and testify at a trial of this action, either in Denmark or California" due to an email from Friis's Danish attorney alleging that Christensen's original

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-02377-CAS(PLAx) | Date | July 10, 2017 |
| Title | EUROPLAY CAPITAL ADVISORS, LLC v. MARIA LOUISE JOENSEN | | |

declaration filed with Joensen's moving papers "violated Christensen's duty of confidentiality owed to Friis, his former client." Id., n.6.

ECA questions the relevance of Joensen's foreign witnesses. Opp'n at 19–20. ECA argues that refiling in Danish Court would complicate its ability to take discovery from seven "material" and "important" United States witnesses, while "at most" simplifying Joensen's ability to take discovery from "five inconsequential Danish witnesses." Id. at 20. ECA alleges that even if this action were refiled in Denmark, Joensen would still need to resort to letters rogatory to take discovery from the five witnesses she lists that reside outside of Denmark in the United Kingdom and Germany. See id.

To the extent that Joensen may be prejudiced by her inability to seek pre-trial discovery from Danish witnesses, this factor weighs slightly in her favor. However, "in asking for the extraordinary measure of dismissal on *forum non conveniens* grounds," a defendant needs "to provide not simply the numbers of witnesses in each locale, but information sufficient to assist the court in assessing the materiality and importance of each witness." Bos. Telecomms. Grp., Inc., 588 F.3d at 1210 (quotation marks omitted).

Joensen has not asserted which, if any, of the witnesses located in Denmark can testify specifically as to the payment arrangements for Skadden's fees in the Los Angeles Schroeder litigation. Thus, it is unclear that pre-trial discovery of Joensen's Danish witnesses is crucial to the presentation of Joensen's defense.

In light of the foregoing, this factor appears to be neutral.

### 5. The Cost of Bringing Witnesses to Trial

"Even if witnesses might testify voluntarily, courts may still consider the comparative costs of transporting witnesses to a particular forum to testify." Van Schijndel v. Boeing Co., 434 F. Supp. 2d 766, 779 (C.D. Cal. 2006).

Joensen asserts that the travel costs for witnesses weigh slightly in her favor. MTD at 16. She contends that while Dyne would presumably travel to Denmark for litigation there, other witnesses can be deposed in the U.S. under 28 U.S.C. § 1782. Id. at 17. Joensen contends "there is little reason to believe that their testimony, taken at deposition, would need to be given in person at trial in Denmark." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    'O'

| | | | |
|---|---|---|---|
| Case No. | 2:17-cv-02377-CAS(PLAx) | Date | July 10, 2017 |
| Title | EUROPLAY CAPITAL ADVISORS, LLC v. MARIA LOUISE JOENSEN | | |

ECA contends that "deposition transcripts and videos are not substitutes for live testimony" and would bring all available witnesses to trial in Denmark. Opp'n at 21. Additionally, ECA factors in that most of its witnesses would require a translator since they do not speak Danish. Id.

Considering that each party's witnesses will need to travel between California and Denmark regardless of where the litigation proceeds, this factor is, on balance, neutral.

### 6.    Enforceability of the Judgment

Joensen asserts that Danish courts will not recognize or enforce U.S. court judgments except under narrow circumstances not applicable here. MTD at 17. Joensen contends that even if ECA wins a judgment against her in U.S. court, it would be an empty victory because Joensen is not present in the U.S. and has no assets here. Joensen Decl. ¶ 24. Joensen asserts that she does not have a "contract or agreement with any U.S.-based record label, publisher or distributor" and receives no royalties or other income from U.S. sources. Joensen Reply Decl. ¶ 5. ECA would allegedly need to commence a *de novo* action in Denmark and relitigate all issues to obtain an enforceable judgment against Joensen. Vejby Decl. ¶ 13. In contrast, Joensen contends that U.S. courts generally recognize and enforce foreign money judgments. MTD at 13; see Cal. Civ. Proc. Code §§ 1715–1724 ("Uniform Foreign-Country Money-Judgments Recognition Act") (enacted in place of the repealed Uniform Foreign Money-Judgments Recognition Act, formerly §§ 1713-1713.8).

ECA disputes Joensen's contention that she has no assets in the forum. Opp'n at 21. ECA alleges that Joensen "almost certainly receives payments from her record label, Universal Music Group, which is located in Santa Monica." Id.; see Dyne Decl. ¶ 25. ECA also contends that Joensen receives royalties when her music is played in the United States from a New York-based performance rights organization, the American Society of Composers, Authors and Publishers, before the royalties are transmitted to Denmark for disbursement to Joensen. Dyne Decl. ¶ 25. ECA further alleges that since Joensen has "expressed an interest in turning her popularity in Europe into popularity in the United States," she may also one day work in the United States and own attachable property here. Opp'n at 22; see also Dyne Decl. ¶ 10.

In light of the party's contentions, this factor does not appear to favor dismissal. Whether or not ECA could enforce any judgment obtained here against Joensen in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        'O'

| | | | |
|---|---|---|---|
| Case No. | 2:17-cv-02377-CAS(PLAx) | Date | July 10, 2017 |
| Title | EUROPLAY CAPITAL ADVISORS, LLC v. MARIA LOUISE JOENSEN | | |

Denmark is of little consequence because ECA contends that it would be able to obtain an adequate remedy in the United States. Accordingly, this factor is either neutral or weighs only slightly in favor of dismissal. In any event, it does not warrant disturbing plaintiff's choice of a forum in the United States.

### 7. All Other Practical Problems

Finally, the Court will consider all other practical problems that may make trial of this case easy, expeditious and inexpensive in either forum. Considerations within this broad category may include the need to implead third-party defendants and the extent to which plaintiff's choice of forum vexes or harasses the defendant.

"'[T]he inability to implead potential third-party defendants' can be a factor weighing in favor of dismissal in a forum non conveniens analysis." Bos. Telecomms. Grp., Inc., 588 F.3d at 1211 (quoting Piper Aircraft, 454 U.S. at 259). However, the fact that a defendant may be unable to implead other parties "is by no means determinative of the *forum non conveniens* inquiry; it is only one consideration weighing in favor of dismissal." Id. Even if a defendant could "institute a separate action for indemnity or contribution against these parties [,] . . . it would be far more convenient, however, to resolve all claims in one trial." Piper Aircraft Co., 454 U.S. at 259. Courts reason that forcing parties to rely on actions for indemnity or contribution is "burdensome," which can be "sufficient to support dismissal on grounds of *forum non conveniens*." Id.

Here, Joensen alleges that she plans to join and assert third-party claims against Friis, Balle (an Actio partner who represented her in a case against Schroeder in Denmark), Actio's bankruptcy administrator, and possibly Friis's trust, Icon, which paid many of the attorneys' fees for lawyers retained by Actio. MTD at 14. Joensen alleges that none of these potential parties would be amenable to jurisdiction in the U.S. and cannot be joined as third-party defendants in this action. Id. Joensen states that she has been advised that she has claims against Friis, Balle, and Actio's bankruptcy

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:17-cv-02377-CAS(PLAx) | Date | July 10, 2017 |
|---|---|---|---|
| Title | EUROPLAY CAPITAL ADVISORS, LLC v. MARIA LOUISE JOENSEN | | |

administrator,[5] and that Denmark is the only forum where all three are subject to jurisdiction.[6] Joensen Decl. ¶ 25.

ECA argues that even if these parties cannot be joined in this action, it is unclear whether Joensen could join them in an action in Denmark. Opp'n at 16. Friis currently resides in the United Kingdom, Joensen Decl. ¶ 2, and Icon is a British Virgin Islands investment fund, id. ¶ 8.

The Court concludes that Joensen's inability to implead Friis, Balle, or Actio's bankruptcy administrator militates in favor of dismissal. Joensen is already engaged in several cases involving Friis that are pending in Denmark. Vejby Decl. ¶ 1. Furthermore, Joensen is involved as an "interested party" in a Danish Court disciplinary action against Balle. Id. ¶ 6. Forcing Joensen to institute an additional action for indemnity against these parties, in the midst of already swelling litigation, may stretch Joensen's resources and ability to litigate her defense effectively in a way that could indeed be burdensome.

Additionally, the doctrine of *forum non conveniens* prevents misuse of venue by dismissing complainants "who seek not simply justice but perhaps justice blended with some harassment." Gulf Oil Corp., 330 U.S. at 507. "The plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Id. at 508.

Here, Joensen alleges that this suit is part of a litigation campaign brought against her by a former fiancé with the intent to harass her on two continents. MTD at 1. Vejby, one of Joensen's Danish attorneys, states that a British Virgin Island company affiliated with Friis, Lismore Investment Holdings Limited, has commenced action against Joensen in Copenhagen City Court. Vejby Decl. ¶ 3. According to Vejby, Friis has asserted additional claims in Danish court against Joensen, and Vejby as her attorney, including

---

[5] According to Vejby, Joensen can assert claims against Balle, Friis, and Icon under Danish law. Vejby Decl. ¶ 16–20.

[6] Joensen's declaration appears to assert a legal conclusion but does not offer factual support for this contention or explain Joensen's basis for offering such an opinion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| | | | |
|---|---|---|---|
| Case No. | 2:17-cv-02377-CAS(PLAx) | Date | July 10, 2017 |
| Title | EUROPLAY CAPITAL ADVISORS, LLC v. MARIA LOUISE JOENSEN | | |

for defamation and breach of an alleged non-disclosure agreement. <u>Id.</u> ¶ 7. Additionally, Gregory L. Smith, Joensen's counsel in this case, claims to have also represented Joensen in two other actions filed against her in Los Angeles Superior Court by or on behalf of her former fiancé, Friis. Dkt. 11-15, Smith Decl. ¶ 3. Furthermore, Joensen's former Los Angeles-based attorney, Kane, states that "one of the obstacles to settlement [in the dispute over Skadden's fees] was Friis' insistence that Joensen provide a 'Statement of Facts' relating to very intimate matters as part of any settlement." Kane Decl. ¶ 10.

Although Joensen avers that she was not even present in the United States when the alleged oral agreement was executed and provides a copy of her I-94 arrival/departure form to support her absence, dkt. 18-7 ("Exh. W"), "conflicts between parties' statements . . . must be resolved in the plaintiff's favor" on a motion to dismiss. <u>Dole Food Co.</u>, 303 F.3d at 1108. Plaintiff alleges that Joensen orally agreed to repay ECA for Skadden's fees advanced on her behalf. Compl. ¶ 6. Dyne further alleges that he has "absolutely no interest in any sort of 'lover's spat' and the only reason that [he] caused this lawsuit to be filed is to recover the approximately $2.5 million that ECA loaned to Joensen." Dyne Decl. ¶ 4.

Taking ECA's allegations as true and resolving the parties' conflicting declarations in ECA's favor, any vexation suffered by the defendant does not appear to be "out of proportion to plaintiff's convenience," <u>Cheng</u>, 708 F.2d at 1410. ECA chose to litigate in California based upon an alleged agreement made between two residents of California concerning the payment of legal fees to a California attorney retained to litigate on Joensen's behalf in California. The alleged factual relationship to the chosen forum tends to refute any suggestion that plaintiff has attempted to force trial "at the most inconvenient place for an adversary, even at some inconvenience to himself." <u>Gulf Oil Corp.</u>, 330 U.S. 507.

The Court concludes that this consideration does not strongly weigh in favor of the defendant, and therefore does not warrant disturbing plaintiff's choice of forum.

### C. Public Interest Factors

The public interest factors include: (1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum. <u>Carijano</u>, 643 F.3d. at 1232.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-02377-CAS(PLAx) | Date | July 10, 2017 |
| Title | EUROPLAY CAPITAL ADVISORS, LLC v. MARIA LOUISE JOENSEN | | |

The only public interest factor that the parties explicitly dispute here is the local interest in the lawsuit. "California has an interest in protecting corporations based in California." Dole Food Co., 303 F.3d at 1119.

ECA maintains "its principal place of business in Los Angeles County, California." Compl. ¶ 1. ECA alleges that California has a strong local interest in this controversy because the "complaint alleges an oral agreement between it and Joensen made in California concerning payment of fees to a lawyer in California relating to California litigation." Opp'n at 23 (quoting MTD at 19).

In contrast, Joensen frames "the true nature of the dispute" as a "fight" between Joensen, a Danish citizen, and Friis, a Danish citizen living in London. MTD at 19. Joensen also positions the California lawsuit against Schroeder as just one piece of a global litigation strategy with actions in various jurisdictions. Joensen Decl. ¶ 22.

Given that the events alleged in the complaint occurred in California between a California-based company and a person residing in California at the time of the alleged agreement, the Court finds that California possesses significant local interest in the matter that weighs against dismissal.

In light of the foregoing, Joensen has not made a "clear showing," Cheng, 708 F.2d at 1410, that dismissal is appropriate and the Court **DENIES** defendant's motion to dismiss.

## V. CONCLUSION

Defendant's motion to dismiss on the grounds of *forum non conveniens* is **DENIED**.

IT IS SO ORDERED.

| | 00 | 20 |
|---|---|---|
| Initials of Preparer | CMJ | |